Mr. Grinvrod, whenever you're ready. May it please the court. When Mr. Castellano admitted violations, the district court revoked his term of supervised release, sent him to prison, and imposed a new term of supervised release following revocation. A special condition governing that new term forbids Mr. Castellano from looking at pornography or even artistic depictions of adult nudity. We objected to that forward-looking condition. In the district court, the government responded on the merits. Today... That's the threshold question. You just said imposed a new term of supervised release. Didn't he already have a life term? Well, your honor, the district court revoked the then existing term of supervised release and sent him to prison for the maximum revocation term. And I think the best way of reading 3583 is that the term imposed under 3583H is a new term of supervised release. And I think the statute gives us strong evidence of that. And so I would direct you first to 3583H itself. The language of 3583H says that the court may require that, quote, the defendant be placed on a term of supervised release after imprisonment. Obviously, place is a defendant in a particular state or condition. Congress did not say that the defendant should simply be continued on a previously existing term of supervised release, but that he be placed on it. We have another statutory hint that this is a new term when you compare that language that I just quoted to section 3583A. It uses the same language. So when a court is imposing supervised release in the first instance, it says that the court may include as part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment. So those, that's textual clues that what the court is doing here is the same thing. It's placing a defendant on a term of supervised release. But there's more statutory text that supports our position on this front. If you look at 3583H's second sentence, it seems to refer to two different terms of supervised release. So it refers to such a term of supervised release when it's referring to the new term, the term that's used. It contrasts it with the original term of supervised release. So again, statutory text suggesting that these are distinct terms and not some unified term. And then we have the overall structure of 3583, which I think supports this conclusion in three different ways from a structural standpoint. So one, we have basically three different rules that will govern a 3583H post-revocation supervised release period than the original term. So we could have a new statutory maximum term of supervised release. We could have a different mandatory minimum term of supervised release. And we could have a different ultimate sunset date for the term of supervised release. So with respect to the statutory maximum, that comes from 3583H's aggregation rule. When someone is originally placed on a term of supervised release and then they have that supervised release revoked, however many times they have it revoked, that total amount of time that they spend in prison on revocations has to be subtracted from the statutory maximum term of supervised release. So when the court is putting someone on supervised release under 3583H, it's dealing with a different maximum term of supervised release, at least in most cases, not when the term is life, than in other cases. With respect to the new mandatory minimum, this Court's decision in Nelson clarifies that a mandatory minimum term of supervised release that might apply, for example, under 3583K for certain sex offenses, does not apply upon a 3583H new term of supervised release. And then finally, we have a later sunset date. And so this is a function of post-revocation supervised release essentially kicking out the ultimate end date of supervised release. If someone is revoked on their last day of supervised release and they're sent to prison for a day, the court could then impose under 3583H a new term of supervised release that it was whatever the statutory maximum was before minus a day. And so if the maximum had been three years or five years, all of a sudden that person's sunset date is three or five years further out than it would have been if their supervised release hadn't been revoked. So that's a long way of answering your question, Judge, but I think there's all kinds of evidence in the statute, whether it's the text or structure that shows that the court is doing something new here, and that is how this court talks about 3583H in other contexts. Most recently, the Nelson decision that we submitted a 28-J letter on uses that same language, a new term of supervised release. I wouldn't necessarily hang my hat on kind of casual references like that, but I think the court is looking at that and the text and the structure, they all lead to that same conclusion. But we also recognize, right, that the reason the district court can impose a sentence upon revocation, the authority for that comes from the original violation, right? That the revocation sentence and the supervised release that follows is part of the original sentence, right? You just noted the time limitations and things. Those are all triggered by the original conviction, right? Yes. I don't dispute that at some level the whole basis for a supervised release here relates back to the original conviction, but I think that's a separate question from whether what the court is doing here is something new. It's a new deprivation of liberty when the person is sent to prison. Arguably, it goes to whether a vagueness or overbreadth sort of facial challenge to a condition that was imposed originally, whether that has to be raised in the first instance when the condition is first imposed, or if you can raise it again every time a supervised release is revoked and then reimposed in a new sense. So this idea that every revocation sentence ties back to the original sentence, there's some connection between that and the idea that if you have an objection to these conditions, you make it when they're imposed. Originally, you don't get a second, third, fourth bite at the apple every time you violate your conditions of supervised release, unless you're making an as-applied challenge, maybe, right? I shouldn't be sent back to prison for this violation because it doesn't apply here or something like that, or circumstances have changed, modification. Your Honor, I understand the conceptual argument. I think it doesn't really fit well in the fits in existing doctrine or how it should fit in the doctrine because the government just cites Johnson and says, well, Johnson's binding precedent on this point. Johnson is clearly not binding precedent on this point. The whole notion of post-revocation supervised release was not even litigated in Johnson. So the government can cite Johnson if it wants to ask for Johnson to be extended into a different context, if it wants a new rule that should be applied in this context, but Johnson doesn't Do you think there's a problem with allowing someone who repeatedly violates their supervised release to have more chances to challenge their original conditions than someone who's abiding by their supervised release conditions? Well, Your Honor, so I don't think that that's the way that the rule is going to cash out, certainly not in all cases and perhaps not even in most, but what the government's asking for is something more extreme than even a rule like that. I mean, what the government is saying is not that the same standard as 3583E2 motions and the same standard that this Court applied in that context in a case like McLeod should apply here. I mean, the government is saying That captures what my concern practically about your position is. So imagine a defendant is placed on two conditions of supervised release, one and two. He does not appeal the validity of either of those two at the time. Years pass and he gets violated for violating condition one. And let's concede one is completely constitutional. One is the most plain vanilla supervised release term in the world. So he gets violated for violating condition one. He gets sent back to prison and the district court reimposes conditions one and two. And he says, oh, well, while we're here, I have a real problem with two. And I know I didn't raise that ever at the time. And so that's the hypo. Imagine that he violates condition one over and over and over again. And after violating condition one the 10th time, he says, I have a real problem with two. For the very first time. He's never once said he has a problem with two until now. That defendant is now better off than the defendant who when he does violate two, tries to defend on the ground that two is invalid. And under Johnson, he can't do that, right? He's not allowed to do that under Johnson. Why does that make sense? Your Honor, I don't think he's better off because Well, he gets to make a challenge that the other person who hasn't violated condition one 10 times doesn't get to make. Well, but unless I'm misunderstanding the hypo, your Honor, Johnson would only forbid him from defending against a violation for that second condition. And so I would agree with you, your Honor, that if a defendant in a case like that waited until he was being revoked for a violation of condition two, that then he could only raise an as applied challenge. But the question is whether as a forward looking condition to govern his at the time that the judgment revoking his prior term of supervised release and imposing a new term is imposed. I guess I guess so. So why don't just basic principles of forfeiture? I mean, I don't think this is jurisdiction. I think it's just forfeiture. But why don't basic principles of forfeiture say, you know, you've got condition one. Sorry, you got condition two. You didn't object the time you were revoked condition two. Like at some point, why don't basic principles of forfeiture entitled the district court to say, why in the world am I hearing about this problem for the first time now that, according to you, existed from the very first time I imposed supervised release 12 years ago? Well, I think in this case, it's an easy answer is that the government waived this argument by not raising it in the district court. And so if they're going to proceed, if they're going to say that this is based in waiver, forfeiture, something like that, then they had to raise this in the district court. They can't raise it for the first time in a response brief on appeal. And I think that 2255 is an analogous context when you look at cases like Metzger that say government's failure to raise a waiver issue is itself a waiver of the waiver. But I think when the court's thinking about this in other cases, I still think it's not going to make a ton of sense to think of it as forfeiture. I think you would have to go further and say that this is something like claim, like issue preclusion. But forfeiture- More claim preclusion, right? Because the argument is that you have this argument available to you, but you didn't press it. I mean, that's what claim preclusion is, right? Well, but it's not the same, I don't think it's the same claim, Your Honor, because it's a different, it's a different, it's a different time. I mean, it's a new, it's a new term of supervised release. And so I think that, I think you'd have to go further than claim preclusion, Your Honor. But I think at the very least, what makes, the only way that the government's rule here would affect cases would be to create an anomaly in the doctrine going the other way. And this goes back to the point you were making, Judge Rushing. I think that if you're worried about situations in which someone would challenge a condition and have a windfall because of a violation, the answer would be to look to the standard in the cloud and to say, well, if there's a change in the facts or the law, we would allow someone who hasn't been violated to come in here and challenge a condition. So you have an alternative argument for modification, right? That we asked to modify this condition and the district court denied modification, right? A different way to conceptualize the challenge. Yes, Your Honor. I mean, I think we would, if that were the standard, we would win on that standard. I don't think that's the correct standard from a doctrinal standpoint. And I would urge the court to look at this as a new judgment. I mean, this is, what the court is doing here is it's revoking supervised release and it's imposing a new sentence. And in many ways, Judge, you're right, that that relates back in some way, at least, to the original judgment. But it doesn't just flow directly from the original judgment. I mean, imagine a situation in which the court simply revoked supervised release, sent Mr. Castellano to prison, and then remained silent. I mean, I don't think anyone would say that the supervised release term had continued past the revocation, the conclusion of his imprisonment on revocation. I mean, the court is doing something new here. This court's cases acknowledge that the court is doing something new. And when the court imposes a sentence on the revocation, so much of that sentencing process is bound up in discretionary, traditional sentencing determinations. How long to send the person to prison for, but also how long, should the court put them on supervised release or not? I mean, that's a highly discretionary decision. This court's decision in Nelson says, yes, the court has full discretion. Should I put them on supervision or not? It would sort of break apart that whole unified analysis to say that the decision of whether to put the person back on supervised release gets reviewed. How long the person is placed back on supervised release gets traditional review. But then the conditions that are going to govern this new term of supervised release that is only existing because the court chose, made the discretionary choice to impose a new term under 3583H, we're going to insulate from any review those conditions. I don't think that there's a doctrinal basis to do that. And the government certainly hasn't brought one out here. I mean, I think that the, as Judge Heitens was saying, that the easiest way to resolve this issue in this case is to say it's not jurisdictional. Clearly, this does not go to the subject matter jurisdiction of the court. Whatever Johnson might have said about jurisdiction, that was citing a federal rule of appellate procedure that this court has subsequently said is a non-jurisdictional claims processing rule. In the mid-2000s, the Supreme Court said, no, we're going to be much more careful about when we talk about things that are jurisdictional versus non-jurisdictional. This is not a jurisdictional argument. The government waived it. And then perhaps the government in a future case could brief this and raise these arguments in the proper forum so that this court can be a court of review instead of first view on this issue. But we would ask the court to consider these for abuse of discretion review. And I think that with respect to that, Your Honor, there is precedent on this matter. If you look at Ellis, Ellis reviewed a pornography ban that had been imposed before. And this is clear on page 1097 of the opinion in that case. The district court had imposed the pornography ban earlier. There was a revocation. The pornography ban was reimposed. And then this court reviewed that ban for abuse of discretion, and it struck the ban down. The other thing, when it goes to the merits, I think Ellis says a lot about this case. My friend says, well, this case is different because Mr. Castellano admitted a pornography addiction. But Mr. Ellis had two. Judge Quattlebaum wrote in his concurrence in Ellis, quote, Ellis admitted a serious pornography and sex addiction. Yet notwithstanding Ellis's admitted addiction to pornography, this court struck down that pornography ban because no individualized evidence tied the ban on legal pornography to Ellis's rehabilitation or recidivism. And so we would ask the court to do the same here. Your Honor, I'll reserve the balance of my time for rebuttal. Thank you very much. Mr. Grano-Mikkelsen, we'll hear from you. Good morning, Your Honors. May it please the court, Aiden Grano-Mikkelsen for the United States. I'll start with the Johnson issue. I think where my friend on the other side and I agree is that this rule is not jurisdictional. It is not subject matter jurisdiction. It is a rule that this court adopted predicated on federal Rule 4 and the timeliness of appeals, which as my friend agrees, is also a mandatory claims processing rule as this court held in Marsh. What is less clear and I think has not been supported by any of the cases is whether or not it has to be asserted in the district court to be preserved. Because it's grounded in Rule 4 about the timeliness of an appeal, Johnson appeared to treat the issue as being an untimely appealed issue, and the remedy for that is typically dismissal of the appeal. So I don't know that it's been characterized as an affirmative defense as procedural default has in 2255, which is what Metzger is talking about. So the court has a plethora of cases talking about how procedural default is an affirmative defense that needs to be pleaded in the government's response to the 2255 motion. That case law is absent with respect to the Johnson rule. Johnson merely says that an appeal from a revocation order does not suffice to challenge special conditions of supervised release that were imposed in the original judgment. Now, I also agree with my friend that Johnson is not entirely on all fours because the conditions were not reimposed. But neither is Holman, which my friend relied on in his briefing, which was the opposite version of a new condition that was added that was not in the original judgment. So I think this case is addressing a slightly different permutation on both cases. And where I think the government's argument comes out ahead is when we look to Sanchez and McLeod. As Judge Rushing pointed out, this court has held that a defendant cannot move to modify his conditions of supervised release unless new legal or factual circumstances have made that argument available where it wasn't available beforehand. As Judge Haytens pointed out, that then puts the individual who violates his supervised release ten times in a far better advantageous procedural position than a defendant who complies but wants to get out of the condition on the basis of a facial challenge ten years later. Can I go back to the question of when the Johnson claims processing rule has to be raised? So it strikes me that this is, like any other forfeiture rule, a matter of sort of managing litigation in a way that makes sense and is efficient and yada yada yada, right? So the why does the government have to raise a Johnson argument? And it strikes me as pretty obvious that the better time to raise the Johnson argument for the first time is before the district court when the defendant says, I'd like you, I know condition nine is the same as it was before, but I have a problem with condition nine and I don't want condition nine reimposed. I mean, it seems to me that pretty much every principle of judicial administration says that at that point the government should say, whoa, whoa, whoa, untimely forfeited judge, don't consider that argument. He should have raised this the first time and he didn't, right? I agree, Your Honor. I think the optimal best practice this time is, is that it be asserted in the district court. I don't think it's been held that this is the kind of defense that needs to be asserted in the district court or it's been, but like any other claim processing rule, the rules about when you have to present it are determined in part by whether the purposes of the rule suggest it should be raised at time X or time. Well, I guess the first question is, is it possible? So can I, let me ask you this again to make implicit something that I think is to make explicit something I think is implicit. Imagine that when the district court revoked him and then imposed enough, whatever, whatever the district court did, the district court said, you still have to comply with one and two, but now I'm adding three. You certainly agree that Johnson doesn't say he can't appeal three at that point because three was never imposed before that point. This is his first chance to challenge three, right? Yes, I agree, your honor. Okay. And so, okay. And because in part I could imagine, I guess the reason I raised this, I could imagine a dispute where the defendant, so now the government agrees that the defendant can challenge new conditions, but he can't challenge old conditions. I guess I could imagine a case where the parties are disagreeing about whether this is really a new condition or not, right? Where the government says, but this is exactly the same condition as I had, as you had before. And you should have raised at the time of the first hearing. And the defendant says, well, sure, but there's like a bunch of intervening Supreme court authority that I couldn't make this claim before because the Supreme court had suggested like, there's lots of reasons why the defendant would say, this isn't really the same. I know I didn't raise this claim before now, but I have a good reason. And I could imagine a dispute between the government and the defendant about whether this is a claim that really should have been raised before. And wouldn't it be a lot better if we'd adjudicated that in the district court rather than for the first time on appeal? Your Honor, I, I, again, agree. I think it's better adjudicated in the district court, but I would point out to the court that it would be an extension of Johnson for us to have argued that those arguments were barred in the district court because Johnson doesn't say that. Johnson talks about an appeal. So we would have been asserting essentially an extension of Johnson, um, maybe saying the same rule from McLeod should apply with revocation proceedings, but there isn't actually precedent that says that. Um, so I agree. Best practices would be raised and, and believe me, I will talk to my AUSAs about this and, and give the presentation on raising this defense. Um, but I would also point out that if we're talking about the interests of judicial efficiency and administration, Metzger actually talks about the exception to the exception to the exception, which is when the rule concerns judicial economy or efficiency, the court will sometimes waive the government's waiver because it's more efficient to deal with this, to deal with settled issues or settled issues. So even if we're in the Metzger universe of we've waived something that is an affirmative defense below, the exception in Metzger applies to this rule because this rule is grounded, as Sanchez points out, in the idea that we don't want to duplicate original proceedings every single time there's a revocation of supervised release. As Sanchez points out, judges would be required to rehash issues in largely, largely duplicative proceedings. And Sanchez then relies on the very unjust point about individuals who revoke, who, who violate their supervised release and have that supervised release revoked. Last question about, um, so Judge Hyten's in the, um, hypothetical that he presented to you, you had, you had three conditions, a new condition, two preexisting conditions, which the district court, and he said, reimposed. You know, by definition, the district court is not required to adhere to those two original conditions. And that's the whole premise of your friend's argument on the other side is that the district court at that point, why couldn't he revisit the imposition of conditions one and two, uh, precisely because we're dealing with an entirely new judgment? Your Honor, I think if the district court in looking at the record said, I no longer think these old supervised release conditions are, um, appropriate or they don't fit the defendant's state now, things like that. He rule and this application of the Johnson rule in the district court has to do with whether or not the district court is required to consider those arguments and take them into account. The defendant, if he challenges conditions that were imposed in the original sentencing, there'd be nothing wrong with the district court saying those were appropriate then. And I think they're appropriate now. And that's kind of the end of the discussion. Your answer kind of, um, your answer moved to language of modification, right? The district court saying, well, these aren't appropriate anymore. Is the government saying a defendant can't bring that sort of challenge? I mean, couldn't the defendant always go to the district court and say this, you know, regardless of whether condition two was appropriate when I was originally sentenced, I don't think it fits still today. Please modify it. So that's the McLeod exception. I would say your Honor is if when there are changed legal or factual circumstances that for some reason, a condition originally imposed is no longer appropriate or defendant wants to argue that it's no longer appropriate. That's the door McLeod says. But to answer Judge Diaz's question, could a district court, I mean, a district court has all sorts of discretion, right? Couldn't the district court say condition two was constitutional when I imposed it, but there's been new law and I'm reconsidering and I don't think I'm going to impose it anymore because it's of questionable validity. Nothing's changed with the defendant, but the intervening law has changed and I no longer have confidence in number two. Your Honor, I just want to make sure I'm understanding your question. The district court can do that. The district court can absolutely do that. The district court has broad discretion with setting conditions of supervised release. It could simply decide I don't like this condition anymore. I imposed it 10 years ago and I haven't seen it be effective in my other cases. I'm taking it out now. I think the district court has the discretion to do that. I think what we're talking about is whether the defendant can raise arguments that were available to him at an original sentencing in a revocation proceeding about whether those conditions should continue going forward. You think the law has changed in a way that a defendant could raise that argument? The defendant could say, look, the law's different than when I was originally sentenced, so this special condition nine is no longer valid. You shouldn't impose it. Does that allow us to review that question in this case? Your Honor, it gets to your point about this is kind of a modification and a revocation mashed together and McLeod says you can ask for modification on that basis. And so I think it would be sort of empty formalism if we were to say you can't raise those arguments in the revocation proceeding, but the day after you can file a motion to modify those conditions to say on the basis of new law that McLeod leaves open. So I see no practical value in that for law to be raised in the context of a revocation proceeding. I think the line is sort of the same as McLeod. Do you think there's new law here? Do you think the door was opened to a modification here because the law changed in such a way that there could be grounds for a modification? I do not. This Court has held, I believe in the case of Morris just recently, that Packingham, Ellis, and I believe Hamilton is the third one, Hamilton, changed the legal landscape about total Internet bans such that individuals could move under McLeod for modification of those bans. But defendant didn't actually challenge his ban on computer devices that can access the Internet in the district court or on appeal. The conditions here relate to merely the limitation on adult pornography, pictures displaying nudity in the magazines involving juveniles. The law has not changed with respect to those. And in fact, the law that the defendant and the Court applied in this case is the same law that it's been, that's found in the statute, that it be reasonably related to the purposes of supervision, that there be an individualized basis for it to be found for the defendant. And so... What about the, turning to the merits, what about the over-breath argument, which I will confess to finding myself a little troubled by, because I have a term that is shockingly broad in its language. And then what I see a district court saying is, well, I don't think it covers this thing that its language seems to cover because, because. Can a district court narrow the terms, so if the terms of supervised release say one thing and that one thing is pretty friggin' broad, can the district court get rid of the constitutional challenge by just asserting that it doesn't cover something that the language seems to cover? I think so, Your Honor, because the district court is the decider of what the supervised release condition is. This isn't a mandatory condition of supervised release that's found in a statute, this is a special condition that the district court imposes. So if the defendant says, hey... But the court speaks through the order, and the order is the terms of supervised release, not what the district court later claims to have meant by the words they use, right? I don't know that I would agree with that, Your Honor. If a district court issues a subsequent order after briefing an argument by the parties that says, this condition of supervised release means X, I think that order is just modifying, if you want to call it that, the condition of supervised release to mean what it says in the order clarifying it. So isn't there some real due process notice implications, problems, that what a term of supervised release means is not what it says, but what the district court later says that it meant to say instead? I think if it had gone the other way, if the language had been narrow and the district court had broadened it in a subsequent order, then the defendant would have an as-applied vagueness or overbreadth challenge in that context. And that's the door that even our court has opened for as-applied challenges, as this court pointed out in Van Donk. So I don't think there are any due process or notice concerns where the language of the special condition is narrowed, particularly where it was narrowed on the defendant's request after briefing an argument in a revocation hearing. So I could see there being a problem if it goes in the other direction, but I don't think in this context. You talked about that law being fixed and there was no change to the legal landscape that warranted a modification, but we talked earlier about Ellis, and of course Van Donk set forth a pretty straightforward rule about the imposition of legal pornography and the requirements for doing that. Why isn't that enough to warrant the district court and or the party to assert a change in the legal landscape warranting modification? Your Honor, I assume if we're using the same standard as McCloud about what a new or legal factual development means in this context, it can't be the case that anytime an opinion is issued on the subject, that's a new legal circumstance, because that deprives McCloud of all sort of sense and meaning. So I think it has to be something that's a sea change or a landscape change or a Supreme Court decision that reverses prior precedent or a novel issue that's never been decided before. But Van Donk, while talking about a pornography ban, applied the statutory language, applied normal principles about whether or not the special condition had to be related to the offense. So Van Donk may have been discussing this issue in detail, but I don't think it's a new legal development in the sense that McCloud and the rule we would be asking for here would be. It wasn't a sea change. It upheld the pornography ban. It didn't strike one down, you know, calling into question how they've been applied in the past. And I don't think Ellis is a good example, either, because Ellis is extremely factually distinguishable from this case. The defendant in that case, his crime was not remotely Internet related. It had nothing to do with computers or computer crime. And the Internet ban involved there had obviously then had no relationship to his offense conduct. It also included extremely broad locational restrictions that the defendant couldn't be anywhere where sexually explicit conduct could be located, like libraries. This is just not that case. Can I ask you about how far the door opens? Let's assume the change in the law door opens, contrary to, this is not your position, but assume that that modification door opens. Is the opening only to the extent of the new law? So when Van Donk and Ellis are talking about legal pornography, but here we have a challenge to a condition that prohibits legal pornography in addition to maybe, you know, magazines with fully clothed juveniles in them. Can we consider, even if we think the door is open under Van Donk and Ellis, can we consider a challenge to that second part that has nothing to do with pornography, but just pictures of juveniles? Or it's kind of the whole condition fair game? Do you have thoughts on that? I have several thoughts in multiple directions, Your Honor. I think that's a very hard question. I think it's something that this court does when it analyzes whether one of its prior precedents has been called into question by a Supreme Court decision. That line is always fuzzy. It's always fuzzy between, if it didn't overrule us entirely, for example, did it still undermine the premises enough that we don't think this condition is no longer good? I think as long as the gravamen of the defendant's argument is this change in the law that is a new legal development makes this condition inappropriate, impermissible, unconstitutional for some reason, that's the claim that can be evaluated. And the district court is in the position, I think, of assessing the interpretation of the law and precedent and changes in the law, and then applying the condition that it thinks appropriate. And then I think this court can review that. So I don't think if the law changes to Special Condition 1, you can appeal Special Condition 9, which is totally unrelated. But I think a subpart of Section 1, if you've got an that component of the special condition should be viewed, then I think that's probably a valid argument. Can I ask another Johnson-related question? So how far does this argument go? Let's assume you've got a defendant who commits a crime, put on supervised release, three conditions, satisfies those conditions, doesn't object to any of them. A year later, he's convicted again of the same offense, same conditions imposed. Can the government make an argument at that point, at the same conditions, can the government make an argument at that point that those conditions, that he's waived any objection to the conditions by not objecting to them in the first proceeding? Your Honor, in this situation, has his term of supervised release on the first terminated? Yes. So that's a great question that I haven't thought about. I don't think so. I don't see the difference. If I claim preclusion, it would seem to me that the government has an argument that he didn't object the first time around and he's stuck with it. And assuming no change in legal circumstances, the law is static, everything remains the same. Generally, Your Honor, I don't think we invoke principles of sort of offensive collateral estoppel in criminal prosecution. And I think this would be sort of collateral estoppel from a different proceeding. That's different than waiver of an argument in an extant proceeding. That's not estoppel, it's not collateral estoppel, it's not importing the results of one proceeding into a second one. One of your friend's argument is that it really isn't an extant proceeding. It's an entirely new one because the condition has been reimposed as a result of revocation. Yes, Your Honor. And my view on that is the point that Judge Rushing brought up. It is well established that supervised release is a component of a sentence that is imposed for an offense and it is the same sentence all the way through. The defendant is not being given new sentences every time supervised release is revoked. Supervised release is a package that includes the potential for revocation, incarceration, and then further supervised release after it. That's the same statutorily authorized bucket of statutory tools. I don't think there are new sentences being imposed subsequently. There would be serious constitutional problems with that. It has always been understood that supervised release is sort of its own unitary component of a sentence and I don't think there's a basis to conclude that new sentences are being imposed each time a sentence is revoked. All right. Thank you. Thank you. Do you have some rebuttal? Thank you, Your Honor. I have six points. We'll see if I get to them. Your Honor, my friend noted that at the revocation hearing, the judge has broad discretion in setting the conditions that will govern a new term of supervised release going forward, but my friend's position is that despite the district court having broad discretion to revisit previously imposed conditions and reevaluate them on its own terms, that discretion is fully insulated from any appellate review. The doctrinal move that my friend makes is to say that, well, this all ties back to the original judgment, but I think that proves too much because, of course, this court is going to review the length of a revocation sentence and the length of the supervision tail for abuse of discretion review or plain error or whether the sentence is plainly unreasonable. And so just tying any component of a supervised release revocation sentence to the original term doesn't insulate any other aspect of that sentence from appellate review. The other thing with respect to the practical consequences of a rule like this, I know the court has expressed concern about windfall to defendants, but of course that doesn't apply to all defendants. And so a judge-created rule or a court-created rule that would seek to eliminate that windfall would have to create one rule for defendants whose end date, whose sunset date, has been extended and therefore haven't received a windfall and instead have had conditions imposed or reimposed that would go beyond the date of their original expiration. And then a different rule for defendants like Mr. Castellano, who were subject to a life term, that seems impracticable and unworkable. Third, I would point to this court's decisions in Ellis and Holloman. If, Your Honor, Judge Heightens, if this is a rule that has its roots in forfeiture or something like that, then it doesn't make any sense that the first final judgment imposing the new condition wouldn't be the one that had to be immediately appealed. The magic that's being done by the original judgment here shouldn't matter if this rule is really rooted in forfeiture, waiver, or something like that. And yet in Ellis we have a reimposed condition that was challenged and reviewed for abuse of discretion, even though at the oral argument in that case there was an extended discussion about what the level of review should be. Ellis is a binding precedential decision of this court. And Holloman, the same thing. I mean, Holloman at least cites Johnson in a footnote and says we're not going to apply the procedural bar from Holloman. And that condition had been imposed at a previous imposition. And so again, the fact that the government doesn't really have a strong doctrinal tie here, I think it would be overreading the government's argument to say, well, we're just going to call it waiver because this court has repeatedly said it's not a waiver. It's not a forfeiture thing. Otherwise, those decisions would have come out the other way. Judge Diaz, with respect to the questions about whether a change in legal circumstances here would entitle Mr. Castellano to review a relief under a McLeod-like standard, I think it absolutely would. My friend cited the Morris decision. That's at 37 F 4th 971. And the court in that case was dealing with internet use conditions, but the same principle applies. And the court said, we're satisfied that Packingham, Ellis, and Hamilton created a new or unforeseen or changed legal circumstances relevant to Morris's internet use conditions, and it allowed the challenge under the McLeod standard. The same is true here. Of course, in Van Donk, the court was applying 3583D. It doesn't have to apply a new statute. It just has to announce a new rule. And the individualized evidence rule is clearly a new rule. I think this case couldn't be distinguished from Morris in that respect. Your Honor, I think that means that the court has to reach the merits of these conditions. And it's worth emphasizing here, Your Honors. Van Donk said that the court was comfortable with the condition in that case, at least in part, because it wouldn't risk sending someone to prison for admiring the government asked for it to be imposed. These broad bans were imposed in violation of the individualized evidence requirement announced in Van Donk and reaffirmed in Ellis, and we asked that this court to strike them. Thank you very much. Thank you both for your able arguments. We appreciate them very much. We would, as you know, typically come down and greet you. Can't do that today, but hope to do that sometime in the future, but know that we are grateful for your arguments here in this case.
judges: Albert Diaz, Allison J. Rushing, Toby J. Heytens